251 So.2d 470 (1971)
John E. PREVOST
v.
Roland A. "Cookie" GOMEZ et al.
No. 8375.
Court of Appeal of Louisiana, First Circuit.
June 30, 1971.
Rehearing Denied September 2, 1971.
*471 Robert Cangelosi and John Schwab, of Theo Cangelosi's Office, Baton Rouge, for appellant.
E. Clark Gaudin, of Smith & Gaudin, Baton Rouge, for appellees.
Before LOTTINGER, SARTAIN and TUCKER, JJ.
LOTTINGER, Judge.
This is a suit on open account. The petitioner is John E. Prevost and defendants are Roland A. "Cookie" Gomez and J. W. Bryant, Sr. The Lower Court rendered judgment in favor of the defendants and against plaintiff dismissing plaintiff's suit at plaintiff's costs, and plaintiff has filed this appeal.
The two individual defendants in this suit are alleged to be "doing business as Cookie's Auto Sales". In truth and in fact, the two defendants were owners of all the corporate stock in a now defunct domestic corporation correctly titled "Cookie's Auto Sales, Inc.". The theory of plaintiff's case is that the defendant, Roland A. "Cookie" Gomez personally incurred the open account indebtedness sued upon in that he did not disclose the corporate entity when the business relationship was established between his firm and the assignor of the account, University Volkswagen, Inc. The plaintiff, as General Manager and Vice-President of University Volkswagen, Inc., supervised the credit department of said firm and approved the extension of credit to Mr. Gomez's company. Later, when University Volkswagen, Inc. changed ownership and the new owners refused to accept the account as part of the assets to be transferred, the plaintiff acquired same by assignment. It was admitted by the plaintiff during the course of the trial that he never had any dealings whatsoever with the other defendant, J. W. Bryant, Sr., and, in fact, does not even know him. It is not seriously contended that there is any basis for assessing liability against Mr. Bryant and the Court certainly can see no such basis. Accordingly, judgment was rendered in the Lower Court in favor of the defendant, J. W. Bryant, Sr., dismissing him from this litigation, and we believe this to be correct. As to the remaining defendant, Roland A. *472 "Cookie" Gomez, there are several aspects of the case which must be considered.
The record discloses that the defendant, Roland A. "Cookie" Gomez, began doing business as Cookie's Auto Sales in 1954 and that the plaintiff, prior to his association with University Volkswagen, Inc. and while working for another employer, did business with Mr. Gomez from 1959 through 1966 or 1967. The corporate existence of Cookie's Auto Sales, Inc. began on May 29, 1963, and Mr. Gomez began sending automobiles from his place of business to University Volkswagen, Inc. for body work in July of 1968. The open account in question was incurred from July 1, 1968 through February 2, 1969.
In the words of the Lower Court:
"The entire basis of plaintiff's case is that he had, at one time, done business with Mr. Gomez on a personal basis; he was extending credit to and relying on Mr. Gomez as an individual; he did not know that Cookie's Auto Sales was incorporated; and, Mr. Gomez never informed him that his business was incorporated.
We are satisfied that the plaintiff did not inquire of the defendant his business status or legal entity and that the defendant, in turn, did not personally disclose the nature of his business structure until after the account was closed. The business relationship arose out of the fact that Cookie's Auto Sales did not have a body shop, needed the services of one, and, University Volkswagen, having a body shop, needed business for it. We are further satisfied that the plaintiff, on behalf of his firm, did business with Mr. Gomez because he knew him personally and had done prior business with him. The plaintiff had no concern initially as to the mode or structure of the defendant's business. It was only after the account went bad that the entity became important. Finally, the court is satisfied that as between Mr. Prevost, the plaintiff, and Mr. Gomez, the defendant, neither is entitled to more credibility than the other."
There are a few other bits of evidence in the record which we feel pertinent but which were not discussed in the Reasons for Judgment of the Lower Court. First, the only evidence that Gomez, was acting as an agent of a corporation rather than as an individual was his own self-serving statement to such. Defendant did not produce another officer of the corporation to corroborate his testimony as to his agency. Secondly, there was testimony by plaintiff that Mr. Gomez told him, "* * * I'm having problems now but I'll sell my bed if I have to pay youto pay you." There was also testimony by Bruce L. Yates, manager of the body shop at University Volkswagen, Inc., that Mr. Gomez told him that if necessary he would sell his home in order to pay the account in question. This testimony by plaintiff and by Mr. Yates is not denied by defendant.
The only defense of defendant, Gomez, is that his dealing with University Volkswagen, Inc. were not in his individual capacity, but in the capacity of an agent and officer of Cookie's Auto Sales, Inc., and that he is therefore not personally responsible for the account in question.
As stated above by the Lower Court, "We are satisfied that the plaintiff did not inquire of the defendant his business status or legal entity and that the defendant, in turn, did not personally disclose the nature of his business structure until after the account was closed." The Lower Court then proceeded to pose and answer the question of whether plaintiff should have known he was dealing with a corporation.
Plaintiff pointed out that defendants' large business sign and telephone listing were both in the name of Cookie's Auto Sales and that neither included the word Incorporated or Inc. Plaintiff also pointed out that University Volkswagen, Inc. had always billed the account in question to Cookie's Auto Sales and said bills were part of the itemized statement of account *473 filed with plaintiff's petition and were offered into evidence at the trial.
Defendant, Gomez, rebutted by showing that his business stationery, checks, invoices, auto sales forms, retail buyers orders, state employment security account, and newspaper advertisements were in the name of Cookie's Auto Sales, Inc. Defendant was further able to show that an employee in the body shop of University Volkswagen, Inc. had signed a receipt for defendant on one of these forms. It was not shown that plaintiff ever saw any of these items.
From this the Lower Court held that there was sufficient public indicia of the incorporation to relieve the agents of the corporation of the duty of disclosing agency before every transaction; that where business is to be of a continuing nature, the failure of the one extending credit to investigate and determine the corporate nature of the other constitutes a violation of duty on his part which estops him from seeking recovery from the corporate officer or agent with whom he negotiated the business; and that the plaintiff was relying upon his prior knowledge of the defendant's operation resulting from prior business dealings and that plaintiff did not have a right to assume that the defendant was still doing business on an individual basis.
The Lower Court further stated:
"Pretermitting consideration of any duty on the part of the defendant to disclose an agency, we further conclude that the plaintiff in this case must be held to have known of the defendant's agency. He either knew or should have known that Cookie's Auto Sales was incorporated. A review of the facts above set forth can lead us to no other reasonable conclusion. As supervisor of the credit department of University Volkswagen, Inc.; having on hand copies of invoices with the corporate status noted; there being available in the local press numerous advertisements showing the corporate designation; former employees of the defendant's firm working for University Volkswagen, Inc. of which plaintiff was an officer and General Manager; being aware of other individuals who were associated with the defendant; these facts, when taken together, do not permit the court to accept a contrary view. The plaintiff cannot be held to have known only of the evidence which supports his position and not to have known of that which is detrimental to his position. A preponderance of the evidence on this point is in favor of the defendant."
It is an established rule of law that it is the duty of an agent to disclose his agency status and the identity of his principal if he would avoid personal liability for contracts made by him. See LSA-C.C. Arts. 3012 and 3013. This rule is also well stated in 3 C.J.S. Agency § 216 and in Perhach v. Bender (La.App., 2nd Cir., 1962) 147 So.2d 18, and the cases cited therein. The question is whether this rule of law is applicable to the case before us.
In our opinion the cases of Wilson v. McNabb, (La.App., 1st Cir., 1963) 157 So. 2d 897, and Jahncke Service, Inc. v. Heaslip, (La.App., Orleans, 1954) 76 So.2d 463, are in point and set forth the law applicable here.
In Jahncke Service, Inc. v. Heaslip, supra, suit was filed against L. W. Heaslip for the unpaid purchase price of building materials and supplies. Defendant averred that the sales were made to L. W. Heaslip, Inc., a corporation. L. W. Heaslip was engaged in business as a general contractor. In 1945 he called upon the credit manager of Jahncke, requested and received a line of credit. In 1947 defendant formed a corporation known as L. W. Heaslip, Inc. to carry on his contracting business. In 1952, seventeen sales were made by Jahncke, each charge was entered as a sale to L. W. Heaslip, and in each case an invoice was entered to L. W. Heaslip. These seventeen orders were paid for with checks *474 of L. W. Heaslip, Inc. Still later, the materials for which payment was in dispute were sold. It was conceded by Heaslip that at no time until long after the delivery of these orders was any express notice given to Jahncke that the purchases were being made for the Heaslip corporation. Here the court held that the fact that Jahncke accepted five or six checks of L. W. Heaslip, Inc. could not be said to put it on notice that it was dealing with a corporation and not with Heaslip individually. The court also quoted the rule of 3 C.J.S. Agency § 216 above. Finally, the court pointed out that when Jahncke inquired of Heaslip why it had not received a notice of a meeting of creditors of the Heaslip corporation, Heaslip stated that he was going to see to it personally that this account was paid. The court said that since this statement, which was not denied, was made after all purchases, it could not be considered a guarantee by Heaslip but that it evidenced the fact that Heaslip realized the credit had been extended to him personally and that Jahncke had not been put on notice that sales were being made to the Heaslip corporation.
In Wilson v. McNabb, supra, decided by this court, suit was filed against B. M. McNabb for the balance due for rentals of equipment. Defendant answered that any obligation owed to plaintiff was the obligation of B. M. McNabb Contractor, Incorporated, and not him personally. The bills for the account due were sent to B. M. McNabb, Contractor. Defendant admitted he never expressly informed plaintiff of the existence of the corporation and that his actions were those of an agent of the corporation in dealing with plaintiff but assumed plaintiff was aware of this fact because on the trucks used to pick up the leased equipment there was stenciled the name of the corporation. In addition, there was offered in evidence a check of B. M. McNabb Contractor, Incorporated, payable to the order of plaintiff for $1,000.00 admittedly received by plaintiff and applied on account. Here, we held the above stated rule of law from 3 C.J.S. Agency § 216, applicable and further, citing with approval Jahncke Service, Inc. v. Heaslip, above, held that plaintiff's acceptance of the check of the corporation in partial payment on the account in no way served to put plaintiff on notice he was dealing with a corporation. We also held that as no evidence was offered other than defendant's self-serving declaration of his agency, the record failed to establish that McNabb was acting as an agent of the corporation and not in his individual capacity in making the verbal contract sued upon, and, accordingly, defendant failed to prove such fact.
The Lower Court in the case before us apparently decided the case by making an exception to the rule, that it is the duty of an agent to disclose his agency status and identify his principal if he would avoid personal liability for contracts made by him, which exception would be that where certain indicia of incorporation are made public and where business is to be of a continuing nature, the agent owes no such duty because plaintiff should have known or learned of the agency. The Lower Court does not cite and we find no such jurisprudence. In light of the jurisprudence we find, and especially the two cases discussed at length herein, we do not believe this exception to be the law.
Whereas in the instant case there was shown to be indicia of incorporation in the form of stationery, invoices, bank checks, and newspaper advertisements, none of which were shown to have been brought to the personal attention of plaintiff, in the two cases discussed above, corporation checks were used to pay on the accounts in question and trucks with the corporation's name stenciled thereon were used to pick up leased equipment from the plaintiff. Certainly the corporation checks and pick up trucks bearing the corporation name in the two discussed cases were stronger cases for finding the plaintiffs knew of defendants' agency, and therefore, making an exception to the general rule *475 that the duty is on the agent to disclose his agency, than in this case. We are not saying that this rule is not subject to exceptions, but simply that we do not find this case to be an exception. We find the general rule applicable as stated.
Whereas in Jahncke Service, Inc. v. Heaslip, above, that court found that although a promise to pay after the account had been incurred could not be considered a guarantee by the individual, it evidenced the fact that the individual realized the credit had been extended to him personally and that the creditor had not been put on notice that the sales were being made to the corporation. We find likewise from the promises made by Mr. Gomez in this case.
In Wilson v. McNabb, above, we held that agency cannot be proven by a selfserving declaration of the reputed agent without other corroborating evidence. We hold likewise in this case due to the fact that there was no evidence other than his own testimony that defendant, Gomez, was an agent for Cookie's Auto Sales, Inc.
We feel that the Lower Court applied an exception to the general rule of law which it was not justified in applying, and its judgment dismissing plaintiff's case is reversed.
There is no dispute between the parties that the amount owed by defendant, Gomez, for body work and parts is the sum of $3,201.95. The only question is to an offset due by plaintiff to defendant for two big second-hand fans which the defendant sold to University Volkswagen, Inc. The price of these fans was to be deducted from the account in question. It is plaintiff's testimony that, "* * * he (Gomez) said they were $150.00 fans and he (Gomez) said I'll take $50.00 a piece for them * * *." It is Mr. Gomez's testimony that, "* * * I (Gomez) told him (Prevost) I would take $150.00 a piece for them and just to apply it * * *." The record does not show that there was a witness to this transaction, and neither the credit of $100.00 which plaintiff is willing to give nor the credit of $300.00 which defendant expects is otherwise supported by the evidence. The plaintiff having proved the balance of the account due him, the burden is on the defendant to prove the offset or credit to which he is entitled. The defendant having failed to do so, we must find plaintiff entitled to $3,201.95 less the $100.00 offset he allowed in his original petition, or a balance of $3,101.95 as prayed for.
For these reasons, the judgment of the Trial Court rejecting the demands of plaintiff against J. W. Bryant, Sr. is affirmed and the judgment of the Trial Court rejecting the demands of plaintiff against Roland A. "Cookie" Gomez is reversed and judgment is rendered in favor of John E. Prevost and against Roland A. "Cookie" Gomez for the sum of $3,101.95 together with legal interest thereon from date of judicial demand until paid and for all costs. Plaintiff's demand for attorney's fees is rejected.
Judgment reversed in part and rendered.